## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHN DOE 1 -2,
On behalf of themselves
and all others similarly situated,

       Plaintiff,

v.

RICHARD SNYDER, Governor of the
State of Michigan, and COL. KRISTE
ETUE, Director of the Michigan State
Police, in their official capacities,

       Defendants.

Case No. 5:16-cv-13137

Hon.  John Corbett O'Meara

**FIRST AMENDED CLASS
ACTION COMPLAINT**

---

### INTRODUCTION

1.  This class action is brought on behalf of individuals criminally convicted of offenses that

    subject them to registration under Michigan's Sex Offenders Registration Act ("SORA")

    against Defendants for violations of Plaintiffs constitutional rights to be free from laws

    that impair fundamental rights to 1) travel; 2) work; 3) raise children; 4) have  housing; 5)

    engage in free speech activities (including the use of the internet); 6) be free from

    harassment and stigma; 7) understand what is required by the statute -  without being

    narrowly tailored to meet a compelling state interest; and 8) to be free from the

    unconstitutional imposition of this law ex post facto.

## NATURE OF THE ACTION

2.  Plaintiffs bring this action on behalf of themselves and Class members alleging violations of their constitutional rights.  Specifically, Plaintiffs allege that the Defendants, in their official capacity, have, among other things:

    a.  Unreasonably restricted Plaintiffs and class members the right to be free from punishment that impairs the fundamental right to travel without being narrowly tailored to meet a compelling state interest in violation of the Fourteenth Amendment to the United States Constitution and the Michigan Constitution;

    b.  Unreasonably restricted Plaintiffs and class members the right to be free from punishment that impairs the fundamental right to work without being narrowly tailored to meet a compelling state interest in violation of the Fourteenth Amendment to the United States Constitution and the Michigan Constitution;

    c.  Unreasonably restricted Plaintiffs and class members the right to be free from punishment that impairs the fundamental right to raise children without being narrowly tailored to meet a compelling state interest in violation of the Fourteenth Amendment to the United States Constitution and the Michigan Constitution;

    d.  Unreasonably restricted Plaintiffs and class members the right to be free from punishment that impairs the fundamental right to have housing without being narrowly tailored to meet a compelling state interest in violation of the Fourteenth Amendment to the United States Constitution and the Michigan Constitution;

    e.  Unreasonably restricted Plaintiffs and class members the right to be free from punishment that impairs the fundamental right to engage in free speech activities (including the use of the internet)without being narrowly tailored to meet a

compelling state interest in violation of the Fourteenth Amendment to the United States Constitution and the Michigan Constitution;

f.   Unreasonably restricted Plaintiffs and class members the right to be free from punishment that impairs the fundamental right to be free from harassment and stigma without being narrowly tailored to meet a compelling state interest in violation of the Fourteenth Amendment to the United States Constitution and the Michigan Constitution;

g.   Unreasonably restricted Plaintiffs and class members the right to be free from punishment that is void for vagueness and does not allow Plaintiffs and class members to understand what is required of them, without being narrowly tailored to meet a compelling state interest in violation of the Fourteenth Amendment to the United States Constitution and the Michigan Constitution.

h.   Unreasonably imposed upon Plaintiff Doe 2 and class members the requirements of SORA as amended in 2011 to Plaintiff Doe 2 and class members convicted prior to SORA as amended in 2011, in violation of the United States Constitutional prohibition against ex post facto application of laws, Art. I § 10, cl.1.

3.   Plaintiffs seek injunctive relief for these constitutional, statutory and common law violations on behalf of himself and Class members.

### JURISDICTION AND VENUE

4.   Jurisdiction is proper under 28 U.S.C. §§ 1331. This Court has supplemental jurisdiction for Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391 because the acts and omissions giving rise to these claims occurred in the State of Michigan and the Defendants all reside in the State of Michigan.

## DECLARATORY AND INJUNCTIVE RELIEF

5. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201 as an actual controversy exists regarding the rights, privileges and immunities to which the Plaintiffs are entitled to, and pursuant to 28 U.S.C. § 2202, this Court has authority to grant injunctive and other necessary and proper relief.

## PARTIES

### I.     Plaintiffs

6. Plaintiff JOHN DOE 1 is a Michigan resident who resides in the Eastern District of Michigan and has been required to comply with Michigan's Sex Offender Registration Act for the next fifteen (15) years as a result of an offense for which he was convicted after 2011, that subjects him to the requirements of SORA. *See* M.C.L. § 28.721 *et. seq.*, as amended July 1, 2011 (SORA 2011).

7. Plaintiff JOHN DOE 2 is a Michigan resident who resides in the Eastern District of Michigan who was convicted prior to 2011 of an offense that subjects him to the requirements of SORA and has been required to comply with Michigan's Sex Offender Registration Act, and has been subjected to the imposition of SORA 2011 requirements ex post facto. *See* M.C.L. § 28.721 *et. seq.*, as amended July 1, 2011 (SORA 2011).

### II.     Defendants

**Governor Richard Snyder**

8. Defendant Richard Snyder is the Governor of Michigan. He is sued in his official capacity.

9. Pursuant to Article 5, §1 of the Michigan Constitution, the executive power of the state is vested in the governor. The Michigan Constitution further provides that the governor

shall take care that applicable federal and state laws are faithfully executed. Mich. Const., Art. 5, § 8.

10. Defendant Snyder is ultimately responsible for the enforcement of the laws of this state, and for supervision of all state departments, including the Michigan State Police.

11. The Governor is an appropriate defendant in a case challenging the constitutionality of a state statute.

**Colonel Kriste Etue**

12. Defendant Colonel Kriste Etue is the director of the Michigan State Police.

13. She is sued in her official capacity.

14. The Michigan State Police maintains Michigan's sex offender registry. M.C.L. § 28.721 et seq.

15. The State Police's responsibilities include enforcing SORA 2011, maintaining the state's database of sex offenders, maintaining an online public sex offender registry, registering offenders (along with other law enforcement agencies), developing registration forms, providing statutorily required notices to registrants, collecting registration fees, and coordinating with national law enforcement and the national sex offender registry. See M.C.L. §§ 28.724, 28.724a, and 28.725 et seq.

16. The director of the Michigan State Police is an appropriate defendant in a case challenging the constitutionality of Michigan's Sex Offender Registration Act.

## CLASS ACTION ALLEGATIONS

17. Plaintiffs bring this class action on behalf of themselves and the Class members pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure seeking equitable and injunctive relief on behalf of the following class ("Injunctive Class"):

All parties currently required to comply with Michigan's Sex Offender
Registration Act pursuant to M.C.L. § 28.721 et seq.

18. The Class satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because, as set forth

herein, Defendants have acted and/or refused to act on grounds that apply generally to

Plaintiffs and the Class members, thereby warranting appropriate injunctive and/or

declaratory relief respecting the Class as a whole.

19. Plaintiffs believe the number of Class members to be in excess of thousands of

individuals. The exact number and identity of Class members is easily ascertainable from

Michigan Sex Offender Registration records.

20. Common questions of law and fact exist as to all Class members. Such questions of law

and fact common to the Class members include, but are not limited to:

a. Whether Defendants violated Plaintiffs and Class members fourteenth Amendment to

the United States Constitution in the following ways:

1. Unreasonably restricting Plaintiffs and class members the right to be free from

punishment that impairs the fundamental right to travel without being

narrowly tailored to meet a compelling state interest in violation of the

Fourteenth Amendment to the United States Constitution and the Michigan

Constitution;

2. Unreasonably restricting Plaintiffs and class members the right to be free from

punishment that impairs the fundamental right to work without being

narrowly tailored to meet a compelling state interest in violation of the

Fourteenth Amendment to the United States Constitution and the Michigan

Constitution;

6

3. Unreasonably restricting Plaintiffs and class members the right to be free from punishment that impairs the fundamental right to raise children without being narrowly tailored to meet a compelling state interest in violation of the Fourteenth Amendment to the United States Constitution and the Michigan Constitution;

4. Unreasonably restricting Plaintiffs and class members the right to be free from punishment that impairs the fundamental right to have housing without being narrowly tailored to meet a compelling state interest in violation of the Fourteenth Amendment to the United States Constitution and the Michigan Constitution;

5. Unreasonably restricting Plaintiffs and class members the right to be free from punishment that impairs the fundamental right to engage in free speech activities (including the use of the internet)without being narrowly tailored to meet a compelling state interest in violation of the Fourteenth Amendment to the United States Constitution and the Michigan Constitution;

6. Unreasonably restricting Plaintiffs and class members the right to be free from punishment that impairs the fundamental right to be free from harassment and stigma without being narrowly tailored to meet a compelling state interest in violation of the Fourteenth Amendment to the United States Constitution and the Michigan Constitution;

7. Unreasonably restricting Plaintiffs and class members the right to be free from punishment that is void for vagueness and does not allow Plaintiffs and class members to understand what is required of them, without being narrowly

7

       tailored to meet a compelling state interest in violation of the Fourteenth Amendment to the United States Constitution and the Michigan Constitution.

    b. Whether Michigan's Sex Offender Registration Act 2011 is unconstitutional as applied to Plaintiff Doe 2 and Class members whose convictions arose prior to 2011.

    c. Whether Michigan's Sex Offender Registration Act is unconstitutional as applied to Plaintiffs and Class members.

21. Plaintiff's claims are typical of the claims of the Class members, and Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs and Class members are similarly affected by Defendants' wrongful conduct.

22. Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other Class members. Plaintiff's interests are coincident with, and not antagonistic to, those of the other Class members. Plaintiffs is represented by counsel who are competent and experienced in the prosecution of civil rights and class action litigation.

23. The questions of law and fact common the Class members predominate over any questions affecting only individual members, including legal and factual issues relating to liability, and no claim is made for damages.

24. Class action treatment is a superior method for the fair and efficient adjudication for the controversy in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons with a method for obtaining injunctive relief for claims that it might not be practicable to pursue

8

individually, substantially outweigh any difficulties that may arise in management of this class action.

25. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants, and would frustrate the efforts of this Court in efficiently resolving these claims.

26. Proper and sufficient notice of this action may be provided to the Class members through actual notice to registrants of the Michigan Sex Offender Registration Act via direct mail and email, among other methods.

27. Plaintiffs and Class members have suffered harm and actual or nominal damages as a result of Defendant's wrongful conduct as alleged herein. Absent a representative action, Plaintiffs and the Class members will continue to suffer losses, thereby allowing Defendants' violation of law to proceed without remedy.

## FACTS

### I.    History of the Michigan Sex Offender Registration Act

28. Michigan passed its first sex offender registration law in 1994. Mich. Pub. Act 295 (1994) (eff. 10/1/95). Before that time, Michigan did not require anyone to register as a sex offender for any purpose.

29. The 1994 statute established a *private* database containing basic information about people convicted of sex offenses. Registration information was available only to law enforcement, and was exempt from all public disclosure. A person who divulged registry information to the public was guilty of a misdemeanor, and a registrant whose information was revealed had a civil cause of action for treble damages. Mich. Pub. Act 295, Sec. 10 (1994).

30. The statute did not require regular verification or reporting. After the initial registration was completed, the only additional obligation was to notify local law enforcement within 10 days of a change of address. The registrant did not need to notify law enforcement in person. Mich. Pub. Act 295, Sec. 5(1) (1994).

31. Registry information was maintained for 25 years for individuals convicted of one offense, and for life for individuals convicted of multiple offenses. Mich. Pub. Act 295, Sec. 5(3)-(4) (1994).

32. Since that time, the legislature has repeatedly amended the statute, each time imposing a stricter regime with new burdens on registrants, and covering more people and conduct.

33. Effective April 1, 1997, the statute's confidentiality protections were relaxed. Law enforcement agencies were required to make registry information available to the public (for zip codes within the agency's jurisdiction) during regular business hours. Mich. Pub. Act 494, Sec. 10(2) (1996). The public could view a paper copy of the registry by visiting their local law enforcement agency.

34. In 1999, registry information became available to the public on the Internet through the public sex offender registry. Mich. Pub. Act 85, Sec. 8(2), 10(2)(3) (1999).

35. New in-person reporting requirements were imposed, with registrants being required to report quarterly or yearly, depending on their offense. Mich. Pub. Act 85, Sec. 5a(4) (1999).

36. In addition, the 1999 amendments: expanded the list of offenses for which registration was required and the categories of individuals required to register for life; lengthened the penalties for registration-related offenses; required registrants to maintain a driver's license or personal identification card; made registry information on certain juveniles public; required fingerprinting and digitized photographs for registrants; and mandated

10

registration for out-of-state students, people working in the state, and anyone convicted of a listed offense or required to register in another state or country. Mich. Pub. Act 85 (1999).

37. In 2002, additional requirements were imposed on both resident and nonresident registrants to report (in person) when they enrolled, dis-enrolled, worked, or volunteered at institutions of higher learning. Mich. Pub. Act 542, Sec. 4a (2002).

38. Amendments in 2004 required the Internet-based public sex offender registry to include photographs. Mich. Pub. Act 238 (2004). In addition, a fee was imposed on registrants. Failure to pay the fee was made a crime. Mich. Pub. Act 237 (2004).

39. Further amendments, effective January 1, 2006, barred registrants (with limited exceptions) from working, residing, or loitering within 1000 feet of school property, and imposed criminal penalties for noncompliance. Mich. Pub. Acts 121, 127 (2005).

40. In addition, the penalties for registration-related offenses were increased. Mich. Pub. Act 132 (2005).

41. In 2006, the statute was amended to allow subscribing members of the public to be notified electronically when a person registers or moves into a particular zip code. Mich. Pub. Act. 46 (2006).

42. As outlined in more detail below, SORA 2011 fundamentally changed Michigan's sex offender registry by categorizing registrants into tiers; and requiring in-person reporting of vast amounts of personal information.

43. In sum, Michigan's sex offender registry, which began as a private law enforcement database in 1995, has changed radically in the last 17 years. SORA 2011 subjects registrants to obligations, restraints, disabilities, and punishment of a different character and different order of magnitude than the original sex offender statutes.

11

II.      **Impact of SORA on Plaintiffs and the Class**

44. SORA 2011 imposes obligations, disabilities, and restraints that are so extensive that they

    cannot be set out in full here, but are instead listed in **Exhibit 1**, which is incorporated by

    reference.

45. By way of summary, SORA 2011 subjects Plaintiffs to continuous reporting,

    surveillance, and supervision.  In addition, SORA 2011 severely limits Plaintiffs ability

    to direct the upbringing of their children; find housing; travel; engage in free speech

    activities (including use of the Internet); be free from harassment and stigma; and

    understand what is required of him under the statute.

46. Finally, registration under SORA 2011 triggers a vast array of additional obligations,

    disabilities, and restraints under other federal, state, and local laws, as well as private

    policies barring or limiting registrants from access to goods or services available to the

    public.

### A. Reporting, Surveillance, and Supervision

47. As a registrant, the Plaintiffs and Class members must report in person every year,

    M.C.L. 28.725a(3)(a), and must provide:

    - all names and nicknames, Social Security number, and date of birth;
    - residential address, including any address where the individual expects to spend more than seven days, as well as the dates of any such temporary stays;
    - employer names and addresses, including information on any person who agrees to hire a registrant for a temporary job, as well as the routes of travel for non-stationary employment;
    - schools attending or schools to which accepted;
    - telephone numbers registered to the individual or routinely used;
    - e-mail and instant message addresses, log-in names or other identifiers assigned to the individual or routinely used;
    - all other designations used in Internet communications or postings;

12

- license plate and registration information for any vehicle owned or regularly operated by the individual, and the location where that vehicle is kept;
- driver's license or personal ID card;
- passport and immigration documents;
- occupational license information; and
- a complete physical description.

M.C.L. § 28.727(1).

48. SORA 2011 also requires Plaintiffs and Class members to provide a photograph, fingerprints, and palm prints. If Plaintiff's appearance changes, he must update the photograph. M.C.L. §§ 28.725a(5); 28.727(1)(q).

49. In addition to reporting in person at regular intervals, Plaintiffs and Class members must report in person within three business days whenever certain information changes. M.C.L. § 28.722(g). The immediate, in-person reporting requirement is triggered whenever Plaintiffs and Class members:

- changes residence;
- begin, change, or discontinue employment;
- enroll or dis-enroll as a student;
- change their name;
- intend to travel for more than seven days;
- establish an e-mail address, instant message address, or other Internet designation; and
- buy or begin using a vehicle, or cease owning or using a vehicle.

    M.C.L. § 28.725(1).

50. There are no good-cause exceptions to the reporting requirements or to the "immediate" notification requirements. Regardless of illness, injury, transportation problems, or other emergencies, the plaintiff must report in person within three days or face criminal charges.

51. Each registration can take up to an hour-and-a-half, not including travel time.

13

## B. Family and Parenting

52. SORA 2011 has severely impaired Plaintiff's and Class member's family relationships and parenting, in large part because the statute bars the plaintiff from "loitering" within 1000 feet of school property. M.C.L. § 28.734. "To loiter" means "to remain for a period of time and under circumstances that a reasonable person would determine is for the primary purpose of observing or contacting minors." M.C.L. § 28.733(b). This provision contains no exception for Plaintiff or class members as parents or other family members, who are observing or contacting his own children.

53. Specifically, the Plaintiff Doe 1 has four children, two of whom—daughters—are still minors, aged thirteen and eleven. Plaintiff Doe 1 cannot attend his daughter's school and extra-curricular events.

54. Class members are similarly impacted.

55. Plaintiffs and Class members' ability to participate in the upbringing of their children is limited because, as a registered sex offender, they cannot participate in their school and extra-curricular events.

56. Due to their status as a registered sex offender, Plaintiffs and Class members have actually or effectively barred from attending parent-teacher conferences. Because of the vagueness of the statute, Plaintiffs and Class members cannot know if or how SORA 2011 applies to their parenting activities. Plaintiffs and Class members are rendered uncertain about where they can and cannot take their children, rendered unable to pick their children up from school, and unable to decipher which of their events they can or cannot attend, and live in fear of prosecution for misunderstanding the requirements.

## C. Housing

57. SORA 2011 also severely limits the Plaintiff's and class members, —and, consequentially, their family's—access to housing.

58. SORA 2011 bars the Plaintiffs and Class members from "residing" within 1000 feet of school property, making a substantial amount of housing unavailable as a matter of law. M.C.L. § 28.735.  Plaintiffs and Class members are likewise prohibited from living with family members if those family members live within 1000 feet of school property.

59. Some (but not all) readings of the 1000 foot requirement may fall into the SORA's exclusionary zone and subject Plaintiffs and Class members to criminal repercussions. SORA 2011 does not define how this 1000 foot requirement is measured.

60. If the Plaintiff's and Class members families are to remain intact these geographic restrictions would force the Plaintiff and his family to move from their family home; and will likewise most likely uproot the Plaintiff's minor children from their school, friends and neighborhood, and would have similar impact on Class members who are parents effected by this portion of SORA.

61. Further, because sex offender registry address information is public, many landlords outside geographic exclusion zones refuse to rent to registrants, since their properties can then be easily identified on the registry.

62. Therefore, in addition to being forced to move from their homes, Plaintiffs and their family, and Class members may be unable to find alternate affordable housing that is not within a restricted zone.

## D. Travel

63. Plaintiffs and Class members' status as a SORA registrant has and will severely restrict Plaintiffs and Class members' ability to travel.

64. Plaintiffs and Class members must provide advance notice when they intend to travel anywhere for more than seven days. They must tell the police where they are going, where they will stay, how long they will be there, and when they will return. M.C.L. § 28.725(1).

65. Plaintiffs and Class members must provide 21 days advance notice if they travel outside the U.S. for more than seven days. M.C.L. § 28.725(7).

66. In addition, Plaintiffs and Class members must travel so that they are able to register in person during the first 15 days of January, April, July and October, as required by the statute.

67. If Plaintiffs and Class members travel, they must comply with any applicable sex offender registration laws in other jurisdictions. Because sex offender laws are exceedingly complex and vary from state to state, it is extremely difficult to obtain accurate information about either affirmative reporting obligations (such as registering one's presence in a state) or prohibitions on ordinary behavior (such as visiting a library or park) in other jurisdictions.

## E. Speech & Internet

68. SORA 2011 severely restricts Plaintiffs and class members' ability to speak freely on the Internet. The plaintiffs not only must provide law enforcement with all electronic mail addresses, instant message addresses, log-in names, or other identifiers that are assigned to or routinely used by them, M.C.L. § 28.727(1)(i), but must also report in person within

16

three days whenever they establish any electronic mail address, instant message address, or other designation used in Internet communications or postings. M.C.L. § 28.725(1)(f).

69. Plaintiffs and Class members are or should be concerned about using the Internet because SORA 2011 is unclear about whether, for example, they must report immediately and in person if they sets up an on-line account to facilitate basic transactions such as the payment of taxes, registration with media streaming services or purchase/review of products on Amazon.

### F. Public Stigmatization

70. The public registry website posts extensive personal information about Plaintiffs and Class members, including residential address, employer address, date of birth, school information, vehicle information, physical description (weight, height, etc.), and a photograph. M.C.L. § 28.728(2).

71. Plaintiffs and Class members are stigmatized and ashamed by the display of this personal information, which given the nature of Plaintiff's and a majority of Class members underlying "offense", is not narrowly tailored to serve a compelling government interest.

### G. Vagueness, Strict Liability, and Impossibility of Compliance

72. Plaintiffs and Class members have been further harmed because the restrictions and obligations of SORA 2011 are so vague that Plaintiffs and Class members are unable to know whether or not he is in violation of the law, or are so extensive and pervasive that Plaintiffs and Class members are literally unable to comply with the law. Moreover, different law enforcement agencies in different places apply the requirements of SORA 2011 differently.

17

73. SORA 2011's requirements for reporting personal information are so vague that Plaintiffs and Class members do not understand what information must be reported, or what changes in information subject them to the in-person immediate reporting requirement.

74. Plaintiffs and Class members are unable to determine what information they must report under M.C.L. § 28.725(1)(f).

75. Plaintiffs and Class members often cannot know if they are working, residing, or "loitering" within 1000 feet of school property because the property boundaries are unknown and the distances are impossible to measure without sophisticated equipment.

76. Plaintiffs and Class members do not know whether they can take his own children to a playground on school property, or to a park, if other children are present.  Plaintiffs and Class members do not know whether they can go to a mall, where children may be present.  The risk of a wrong decision is a criminal charge.

77. In discussing this case with counsel, Plaintiffs earned of many obligations and restrictions of which he was previously unaware.  Plaintiffs is concerned that he will inadvertently violate SORA 2011's requirements because he does not understand what they are.   Class members are in the same quandary.

78. Finally, SORA 2011 imposes criminal liability despite the impossibility of compliance. SORA 2011 imposes liability regardless of whether illness, injury, or practical difficulties make compliance impossible.

79. Plaintiffs fear that despite their best efforts to understand and comply with the law, and despite the absence of any intention to violate the law, they will be held strictly liable for any failure to comply.   Class members are in the same quandary.

80. SORA 2011 imposes penalties of up to 10 years imprisonment for violations of the Act. M.C.L. §§ 28.729(1); 28.734(2); 28.735(2).

### H.  Consequences Beyond SORA 2011

81. Because Plaintiffs and Class members are required to register as a sex offender under SORA 2011, they are also subject to a vast and labyrinthine array of laws and ordinances imposed on registered sex offenders by the federal government, other state or tribal governments, and local municipalities.

82. Because registration in one state generally triggers registration in another state, the fact that Plaintiffs and Class members are subject to SORA 2011 means they are also subject to the sex offender laws of other jurisdictions if they travel or move.

83. In addition, because Plaintiffs and Class members are required to register as a sex offender under SORA 2011, they are subject to policies by private entities that refuse to provide goods or services to registered sex offenders.  But for the fact that Plaintiffs and Class members are labeled by the state as  registered sex offenders, the goods and services provided by those private entities would generally be available to them.

### III.    SORA is Not Rationally Related to the Goal of Public Safety

84. The avowed purpose of Michigan's sex offender registry is to "prevent[] and protect[] against the commission of future criminal sexual acts by convicted sex offenders." M.C.L. § 28.721a.

85. The idea that SORA 2011 will promote public safety is based on the assumption that sex offender registration will reduce recidivism by convicted offenders and thereby reduce the risk to the public.

86. That assumption set forth in Paragraph 84 is false.

87. In fact, the research shows that public registries are likely to *increase, rather than decrease, recidivism*, and are therefore counterproductive to their avowed purpose of public protection.

88. Specifically, this research shows that the more people a state subjects to public sex offender registration, the higher the relative frequency of sex offenses in that state. Public registries (based on the offense of conviction) correlate with an *increase* in frequency of sex offenses against all types of victims.

89. Applied to Michigan, this research suggests that SORA 2011 contributes to sex offense rates in Michigan that are 10% higher than they would be without SORA 2011.

90. Although it may seem counter-intuitive that public registration increases rather than decreases recidivism, these results reflect the fact that sex offender registration and the attendant consequences exacerbate risk factors for recidivism, such as lack of employment and housing, and prevent healthy reintegration into the community.

91. These results are mirrored by other evidence-based research on the impact of sex offender registration. Most studies reveal no significant reduction in sex crime rates that can be attributed to sex offender laws and policies. Rather, there is a significant body of empirical work that overwhelmingly shows that, at best, public registration makes no difference to recidivism rates, and that it may well be counter-productive

92. The two studies that detected reductions in sex crime recidivism after the passage of registration laws were both in states that have risk-based, rather than offense-based, classification, and that limit public notification to those offenders who have been individually determined to pose the greatest threat to community safety.

93. Moreover, there is no research to support the hypothesis that registrants who live closer to child-oriented settings are more likely to reoffend. Rather, the research shows that where registrants live is not a significant contributing factor to recidivism.

94. Residency restrictions reduce housing options for registrants, leading to housing instability. Housing instability is consistently correlated with higher criminal recidivism, and may help account for the increases in recidivism triggered by registration. Thus, residency restrictions are likely to increase rather than decrease sexual offending.

95. Similarly, requirements that interfere with employment, social support, and engagement in pro-social activities undermine the avowed public safety goals of sex offender registration laws. Social policies that ostracize and disrupt the stability of sex offenders are counterproductive to increasing public safety.

96. Failure to comply with registration requirements does not predict sexual recidivism.

97. There is no empirical evidence to support the notion that more frequent registration check-ins lower recidivism, nor is there evidence that reporting additional information (*e.g.*, email addresses, employment information) reduces recidivism. In sum, SORA 2011 is not rationally related to the public safety goal it purports to serve.

### IV.    The Requirements of SORA Bear No Reasonable Relationship to the Risk That Individual Registrants Pose to the Community

98. SORA 2011 is also premised on the assumption that all individuals convicted of sex offenses pose a great risk to public safety, which justifies continuous and lengthy supervision and restrictions.

99. In fact, while some individuals convicted of sex offenses will reoffend, the vast majority of new sex offenses are committed not by registered offenders, but by individuals without prior sex offenses.

100.    Among those with prior sex offenses, recidivism rates vary with the presence of certain risk factors. While some individuals convicted of sex offenses pose a significant risk to public safety, most, such as Plaintiffs, do not.

101.    SORA 2011 is not based on risk. The tier to which an individual is assigned, whether an individual is listed on the public registry, and how long an individual must register, are all based solely on the offense of conviction, not on the individual's level of risk.

102.    Because recidivism risk declines significantly with advancing age and with time spent offense-free in the community, requiring registration for extensive time periods is both inefficient and unnecessary.

103.    In addition, SORA 2011, by focusing on the danger posed by strangers (who can be identified through the registry), misidentifies the source of risk. In the overwhelming majority of cases of child sexual abuse, the offender was a family member or acquaintance, not a stranger listed on the registry.

104.    Public sex offender registration and residency restrictions, which focus on "stranger danger," give parents a false sense of security by implying that knowing where sex offenders live or banishing them from the community in fact reduces the risk of sex offenses being committed, when such measures do not have this effect.

105.    In sum, the requirements of SORA 2011 bear no rational relationship to the risks that individual registrants pose to the community.

V.    **Geographic Exclusion Zones**

106.    Under SORA 2011, Plaintiffs are barred from residing, working, or "loitering" within a "student safety zone," defined as 1000 feet from school property.  M.C.L. §§ 28.733-735.

107.    The State of Michigan does not make maps available to the public showing where the exclusion zones are located or what their boundaries are.

108.    It is impossible for ordinary people to identify the areas that are inside and outside the exclusion zones.  The task is difficult even for experts with sophisticated mapping technology.  Distances are difficult to estimate or measure and property boundaries are difficult to locate.  Moreover, exclusion zones often have irregular shapes, because they are measured from property boundaries and because the zones overlap.  Exclusion zones are not shaped like simple circles around a fixed point.

109.    It is impossible for Plaintiffs to comply with the prohibition on "loitering," which requires moment-to-moment knowledge of whether or not they are in an exclusion zone.

110.    The exclusion zones cover vast areas, especially in urban and suburban regions. Because exclusion zones are measured as the crow flies, rather than as people actual travel between two points, some exclusion zones cover areas that are much further than 1000 feet from a school, in terms of the travel distance.

111.    Exclusion zones put a significant percentage of cities and towns off-limits.  As a result, exclusion zones severely restrict access to employment and housing, and limit registrants' ability to engage in normal human activity.

## CLAIMS FOR RELIEF

### COUNT I: VIOLATION OF THE DUE PROCESS CLAUSE (Travel)

112.    The right to travel is a fundamental right that is protected under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

113.    SORA 2011 substantially interferes with Plaintiff's and Class members ability to travel.

114.    SORA 2011 does not provide for any individualized consideration before restricting the plaintiffs' right to travel.

115.    SORA 2011 violates Plaintiff's and Class members' fundamental right to travel because it is not narrowly tailored to serve a compelling state interest.

### COUNT II: VIOLATION OF THE DUE PROCESS CLAUSE (Work)

116.    The right to engage in the common occupations of life is a fundamental right that is protected under the Due Process Clause of the Fourteenth Amendment.

117.    SORA 2011 substantially interferes with Plaintiff's and Class members' ability to engage in the common occupations of life.

118.    SORA 2011 creates a wholesale barrier to employment. That barrier is not based on the Plaintiff's or Class member's fitness or capacity to work in the jobs from which they have been excluded.

119.    SORA 2011 does not provide for any individualized consideration before restricting the Plaintiff or Class member's ability to engage in the common occupations of life.

120.     SORA 2011 as applied to Plaintiff and Class members, violates their fundamental

right to engage in the common occupations of life because it is not narrowly tailored to

serve a compelling state interest.

### COUNT III: VIOLATION OF THE DUE PROCESS CLAUSE (Children)

121.     The right to direct the education and upbringing of children is a fundamental right

that is protected by the Due Process Clause of the Fourteenth Amendment.

122.     By mandating geographically restricting areas where Plaintiff and Class members

can live, work or "loiter", SORA 2011 substantially interferes with their ability to direct

the education and upbringing of their children.

123.     SORA 2011 does not provide for any individualized consideration before

restricting Plaintiff's or Class member's rights to direct the education and upbringing of

his children.

124.     SORA 2011 violates Plaintiff's and Class members fundamental right to direct the

education and upbringing of children because it is not narrowly tailored to serve a

compelling state interest.

### COUNT IV: VIOLATION OF THE DUE PROCESS CLAUSE (Vagueness, Impossibility and Strict Liability)

125.     The Due Process Clause of the Fourteenth Amendment prohibits states from

enforcing laws that are unconstitutionally vague.  As a matter of due process, statutory

requirements must be written with sufficient specificity that persons of ordinary

intelligence need not guess at their meaning and will not differ as to their application.

126.     Under the vagueness doctrine, SORA 2011 contains provisions that are

constitutionally invalid as applied to Plaintiffs because those provisions fail to provide a

person of ordinary intelligence fair notice of what is required and what is prohibited

25

under the statute, making it impossible for the plaintiffs to conform their conduct to the

statutory requirements, and making it likely that the statute will be enforced in different

ways in different places or against different people.

127.    The Due Process Clause of the Fourteenth Amendment prohibits states from

enforcing laws with which it is impossible to comply. SORA 2011 contains provisions

with which compliance is impossible.

128.    The Due Process Clause also limits the use of strict liability in the criminal law.

SORA 2011 contains provisions that impose strict liability in violation of due process.

129.    The parts of SORA 2011 that are void for vagueness, or are impossible to comply

with, or wrongly impose strict liability include but are not limited to:

  a.  the prohibition on working within a student safety zone, M.C.L. §
        i.  733-734;
  b.  the prohibition on loitering within a student safety zone, M.C.L. §
        i.  733-734;
  c.  the prohibition on residing within a student safety zone, M.C.L. § 28.733
        & 735;
  d.  the requirement to immediately report changes in personal data, M.C.L. §
        28.725;
  e.  the requirement to report educational information, M.C.L. § 28.724a; and
  f.  the requirement to maintain a driver's license or state personal identification card
        with a current address. M.C.L. § 28.725a(7).

### COUNT V: VIOLATION OF THE EX POST FACTO CLAUSE

130.    The retroactive application of SORA 2011 violates the Ex Post Facto

Clause of the U.S. Constitution, Art. I, § 10, cl. 1, because it makes more

burdensome the punishment imposed for offenses committed prior to

enactment of SORA 2011, and it applies SORA 2011 retroactively.

## LACK OF LEGAL REMEDY

131.      Plaintiff and Class member's harm is ongoing, and cannot be alleviated except by injunctive relief.

132.      No other remedy is available at law.

## REQUEST FOR RELIEF

Wherefore, Plaintiff and Class members request that this Court:

a.  That the Court determine that this action may be maintained as a class action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be certified as class representative and Plaintiff's counsel be appointed as counsel for the Class;

b.  That the unlawful conduct alleged herein be declared to be illegal in in violation of the federal and state constitutional law as alleged herein;

c.  That a temporary and permanent injunction issue as to the enforcement of the unconstitutional clauses of SORA as written;

d.  That the Court order Defendants to cease enforcement of the unconstitutional clauses of SORA as written as to Plaintiff and Class members;

e.  That Defendants be enjoined from engaging in the same or similar practices alleged herein;

f.  That Plaintiff and Class members  recover their costs of suit, attorneys' fees and expenses as allowed by law; and

g.  All other relief allowed by law and equity.

Dated: September 22, 2016

                                     Respectfully Submitted,

                                     OLIVER LAW GROUP P.C.

                                     /s/ Alyson Oliver
                                     Alyson L. Oliver (P55020)
                                     363 W. Big Beaver Rd., Suite 200
                                     Troy, MI 48226
                                     Tel. (248) 327-6556
                                     Fax: (248) 436-3385
                                     E-mail: notifications@oliverlg.com
                                     *Attorneys for Plaintiff*