**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOHN DOE, et al.,

       Plaintiffs,

v.                                 Case No. 16-13137

RICHARD SNYDER, et al.,

       Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTIONS, GRANTING INJUNCTIVE RELIEF, AND DIRECTING DEFENDANTS TO PROVIDE NOTICE OF THIS ORDER TO SORA REGISTRANTS**

Plaintiffs bring constitutional challenges to Michigan's Sex Offender Registration Act ("SORA") on behalf of a certified class comprised of multiple subclasses. Pending before the court are two motions filed by Plaintiffs. In their first motion, Plaintiffs seek declaratory and injunctive relief on behalf of the subclasses which challenge alleged violations of the ex post facto clause. In their second motion, Plaintiffs seek summary judgment and injunctive relief on behalf of all class members on their remaining constitutional challenges. Both motions have been fully briefed, and the court held oral argument on February 5, 2020. For the reasons explained below, the court will grant both motions and will enter permanent injunctive relief enjoining Defendants and their agents from enforcing certain provisions of SORA against the primary class and enjoining Defendants and their agents from enforcing the entirety of SORA against registrants whose offenses occurred prior to the enactment of the 2011 amendments to SORA (i.e. members of the ex post facto subclasses).

## II. BACKGROUND

## A. Procedural History

### i. *Does I*

Although this case was filed in 2016, the constitutional challenges to SORA brought in the instant action were first pursued by five John Doe plaintiffs four years earlier. *Does v. Snyder*, No. 12-11194 (E.D. Mich. 2012) ("*Does I*"). In the *Does I* case, the court summarized the legislative history of SORA and issued a series of opinions resolving the parties' various dispositive motions. The court's pertinent rulings in the *Does I* case are summarized below:

(1) SORA is a regulatory statute, not criminal statute, and the retroactive application of the 2011 amendments to SORA does not violate the ex post facto clause. *Does I*, No. 12-11194 (E.D. Mich. Mar. 18, 2013) (ECF No. 27, PageID.683);

(2) SORA's retroactive application of lifetime reporting requirements does not violate the due process clause. *Does I*, No. 12-11194 (E.D. Mich. Mar. 31, 2015) (ECF No. 103, PageID.5939);

(3) the following sections of SORA are unconstitutionally vague in violation of the due process clause, *Does I*, No. 12-11194 (ECF No. 103, PageID.5890–5900):

> (a) the prohibition on working within a student safety zone, Mich. Comp. Laws. §§ 28.733–734;

> (b) the prohibition on loitering within a student safety zone, Mich. Comp. Laws. §§ 28.733– 734;

> (c) the prohibition on residing within a student safety zone, Mich. Comp. Laws. §§ 28.733, 28.735;

> (d) the requirement to report "[a]ll telephone numbers . . . routinely used by the individual," Mich. Comp. Laws.§ 28.727(1)(h);

> (e) the requirement to report "[a]ll electronic mail addresses and instant message addresses . . . routinely used by the individual," Mich. Comp. Laws. § 28.727(1)(l); and

(f) the requirement to report "[t]he license plate number, registration number, and description of any motor vehicle, aircraft, or vessel . . . regularly operated by the individual," Mich. Comp. Laws. § 28.727(1)(j);

(4) SORA violates the due process clause by imposing strict liability for violations, and the statute must be read as imputing a knowledge requirement. *Does I*, No. 12-11194 (E.D. Mich. Mar. 31, 2015) (ECF No. 103, PageID.5907–09);

(5) the following sections of SORA violate the First Amendment, *Does I*, No. 12-11194 (E.D. Mich. Mar. 31, 2015) (ECF No. 103, PageID.5927–29; ECF No. 118, PageID.6029):

(a) the requirement "to report in person and notify the registering authority . . . immediately after . . . [t]he individual . . . establishes any electronic mail or instant message address, or any other designations used in internet communications or postings," Mich. Comp. Laws. § 28.725(1)(f);

(b) the requirement to report "[a]ll telephone numbers . . . routinely used by the individual," Mich. Comp. Laws. § 28.727(1)(h);

(c) the requirement to report "[a]ll electronic mail addresses and instant message addresses . . . routinely used by the individual," Mich. Comp. Laws. § 28.727(1)(l);

(d) the retroactive incorporation of the lifetime registration's requirement to report "[a]ll electronic mail addresses and instant message addresses assigned to the individual . . . and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system," Mich. Comp. Laws. § 28.727(1)(i).

Both Plaintiffs and Defendants appealed the court's rulings. *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016). The Sixth Circuit's decision focused on only Plaintiffs' ex post facto claim. The Circuit held that SORA imposes punishment and that the retroactive application of SORA's 2006 and 2011 amendments is unconstitutional. *Id.* at 706. This decision effectively vacated the above-listed first and second rulings of this court but arguably relegated to dicta the remainder of this court's rulings. Importantly, and as explained in more depth below, the Sixth Circuit did not find that only certain

portions of the 2006 and 2011 amendments were unconstitutional; the court broadly invalidated the amendments and held that "[t]he retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional, and it must therefore cease." *Does #1-5*, 834 F.3d at 706.[1] The Sixth Circuit remanded *Does I* for the entry of judgment consistent with its decision, and the Supreme Court denied Defendants' petition for certiorari. *Snyder v. John Does #1-5*, 138 S. Ct. 55 (2017).

On remand, this court entered a stipulated final judgment that declared the "retroactive application of Michigan's Sex Offenders Registration Act's (SORA) 2006 and 2011 amendments violates the Ex Post Facto Clause of the U.S. Constitution." *Does I*, No. 12-11194 (E.D. Mich. Jan. 26, 2018) (ECF No. 153, PageID.6514.) The court also enjoined Defendants from enforcing the 2006 and 2011 amendments against the plaintiffs. (*Id.*)

## B. *Does II*

Days after the Sixth Circuit's decision in *Does I*, six John Doe Plaintiffs filed a class action complaint before this court challenging the constitutionality of SORA. *John Doe et al. v. Snyder*, No. 16-13137 (E.D. Mich.) ("*Does II*"). The claims in *Does II* are, at their core, the same constitutional challenges raised by the individual plaintiffs in *Does I*. The *Does II* second amended complaint contains four claims:

(1) a due process challenge based on vagueness to the following provisions SORA:

(a) the prohibition on working within a student safety zone, Mich. Comp. Laws. §§ 28.733–734;

---

[1] *See infra* Part IV.A.1.

4

(b) the prohibition on loitering within a student safety zone, Mich. Comp. Laws. §§ 28.733–734;

(c) the prohibition on residing within a student safety zone, Mich. Comp. Laws. §§ 28.733, 28.735;

(d) the requirement to report "[a]ll telephone numbers . . . routinely used by the individual, Mich. Comp. Laws. § 28.727(1)(h);

(e) the requirement to report "[a]ll electronic mail addresses and instant message addresses . . . routinely used by the individual," Mich. Comp. Laws. § 28.727(1)(l); and

(f) the requirement to report "[t]he license plate number, registration number, and description of any motor vehicle, aircraft, or vessel . . . regularly operated by the individual," Mich. Comp. Laws. § 28.727(1)(j).

(2) a due process challenge based on SORA's imposition of a strict liability scheme for violations of the act;

(3) a First Amendment challenge based on:

(a) the requirement "to report in person and notify the registering authority . . . immediately after . . . [t]he individual . . . establishes any electronic mail or instant message address, or any other designations used in internet communications or postings," Mich. Comp. Laws. § 28.725(1)(f); and

(b) the retroactive incorporation of the lifetime registration's requirement to report "[a]ll electronic mail addresses and instant message addresses assigned to the individual . . . and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system," Mich. Comp. Laws. § 28.727(1)(i); and

(4) an ex post facto challenge based on Defendants' continued enforcement of the 2006 and 2011 amendments.

(ECF No. 34, PageID.384–87.)

In September 2018, the court entered a stipulated order certifying the class under

Federal Rule of Civil Procedure 23(b)(2). (ECF No. 46.) The certified class is comprised

of a primary class and two subclasses. Plaintiffs define the primary class as all people who are or will be subject to registration under SORA. The primary class seeks relief on Count I (vagueness); Count II (strict liability) and Count III (First Amendment). (EFC No. 46, PageID.693.) The subclasses seek relief on Count IV (ex post facto) and are defined as follows:

> (1) The "pre-2006 ex post facto subclass" is defined as members of the primary class who committed their offense or offenses requiring registration before January 1, 2006, and who have committed no registrable offense since.

> (2) The "2006-2011 ex post facto subclass" is defined as members of the primary class who committed their offense or offenses requiring registration on or after January 1, 2006, but before April 12, 2011, and who have committed no registrable offense since.

(*Id.*)

In July 2018, Plaintiffs moved for partial summary judgment on the ex post facto claim on behalf of the subclasses. Plaintiffs requested declaratory and injunctive relief but deferred for later briefing the question of whether SORA's amendments are severable. (ECF No. 40.) While this motion was pending, the parties agreed to focus their resources on legislative reform, rather than litigating severability. At the joint request of the parties, the court repeatedly adjusted the briefing schedule to aid in the parties' attempts to engage in legislative negotiations. (ECF Nos. 41, 44, 45, 47, 51, 54.)

In May 2019, the court entered a stipulated order granting declaratory relief for Plaintiffs, holding that the 2006 and 2011 amendments were unconstitutional as applied to the ex post facto subclasses. (ECF No. 55.) The court deferred ruling on the issues of injunctive relief and the severability of the 2006 and 2011 amendments for 90 days "[i]n

order to avoid interfering with the Michigan legislature's efforts to address the *Does I* decisions and their findings of constitutional deficiencies with SORA." (ECF No. 55, PageID.783.) Information presented by Plaintiffs' counsel at oral argument indicates that while the briefing schedule was stayed, the parties engaged in several apparently substantial discussions with "stakeholders" and legislative staff, which resulted in draft legislation. Counsel reported that the parties were hopeful that discussions would continue and culminate in the passage of new legislation, but for reasons unknown to the court, those discussions ended with no replacement legislation in place. Consequently, Plaintiffs exercised their option of seeking relief in returning to court, and the court issued a revised briefing schedule. (ECF No. 60.)

In September 2019, Plaintiffs filed a refreshed motion for partial summary judgment addressing the severability of the amendments to SORA and injunctive relief for their ex post fact claim. (ECF No. 62.) Several months passed, and Plaintiffs filed a motion for partial summary judgment on behalf of the primary class related to their remaining constitutional claims (vagueness, First Amendment, strict liability). Both motions have now been fully briefed, were argued before this court, and will be addressed in this opinion.

## B. Related Michigan Supreme Court Case

Defendants' briefs point to and rely upon an appeal in a criminal case now before

the Michigan Supreme Court, *People v. Betts*, No. 14-8981 (Mich.).[2] *Betts* involves a

criminal defendant who challenges his conviction for failing to register under SORA.

Defendant/Appellant Betts was convicted in 1994 for the crime subjecting him to SORA

registration.[3] The Michigan Supreme Court granted leave to appeal and issued a

briefing order directing the parties to address the following issues:

> (1) whether the requirements of the Sex Offenders Registration Act
> (SORA), MCL 28.721 et seq., taken as a whole, amount to "punishment"
> for purposes of the Ex Post Facto Clauses of the Michigan and United
> States Constitutions;
>
> (2) if SORA, as a whole, constitutes punishment, whether it became
> punitive only upon the enactment of a certain provision or group of
> provisions added after the initial version of SORA was enacted;
>
> (3) if SORA only became punitive after a particular enactment, whether a
> resulting ex post facto violation would be remedied by applying the version
> of SORA in effect before it transformed into a punishment or whether a
> different remedy applies;
>
> (4) if one or more discrete provisions of SORA, or groups of provisions,
> are found to be ex post facto punishments, whether the remaining

---

[2] Although Plaintiffs' initial brief also mentioned a possible, related case pending before the Sixth Circuit, *Lewis v. Whitmer*, No. 18-1912 (6th Cir.) (ECF No. 62, PageID.816), Plaintiffs did not discuss it during oral argument. The *Lewis* case carries no precedential weight in the instant matter because the Sixth Circuit's docket shows that the case was recently remanded to district court at the joint request of the parties. *See Lewis v. Whitmer*, No. 18-1912, Joint Mot. for Limited Remand (6th Cir. Jan. 27, 2020) (ECF No. 35); Order for Joint Mot. to Remand (6th Cir. Jan. 28, 2020) (ECF No. 36.)

[3] The court obtained the date of the defendant's offense from the publicly available registration database. Michigan Public Sex Offender Registry, *Mich. State Police*,http://www.icrimewatch.net/offenderdetails.php?OfndrID=1996102&AgencyID=55 242,  (last visited Jan. 24, 2020).

provisions can be given effect retroactively without applying the ex post facto provisions;

(5) what consequences would arise if the remaining provisions could not be given retroactive effect; and

(6) whether the answers to these questions require the reversal of the defendant's conviction pursuant to MCL 28.729 for failure to register under SORA.

(ECF No. 66-2, PageID.979–80.)

### III. STANDARD

Plaintiffs move for declaratory and injunctive relief on behalf of the ex post facto subclasses on their ex post facto claim and move for partial summary judgment on behalf of the primary class on their remaining constitutional claims.

Summary judgment is appropriate when there exists no dispute of material fact and the moving party demonstrates entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the court considers all evidence, and all reasonable inferences flowing therefrom, in the light most favorable to the nonmoving party. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). The court may not make credibility determinations or weigh the evidence presented in support or opposition to a motion for summary judgment; only the finder of fact can make such determinations. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

The movant has the initial burden of showing—pointing out—the absence of a genuine dispute as to any material fact; i.e., "an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986).

The burden then shifts to the nonmoving party to set forth enough admissible evidence to raise a genuine issue of material fact for trial. *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248; *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017). Not all factual disputes are material. A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim "and would affect the application of the governing law to the rights of the parties." *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 660 (6th Cir. 2013).

## IV. DISCUSSION

The court begins by addressing the claim pursued by the ex post facto subclasses and then turns to the remaining claims brought on behalf of the primary class. Finally, the court will address the issue of Defendants' obligation to provide notice of this decision to class members, law enforcement, and prosecutors.

## A. Ex Post Facto Claim (Count IV)

Plaintiffs argue that the Sixth Circuit broadly held in *Does I* that the 2006 and 2011 amendments to SORA violate the ex post facto clause and cannot be applied, in whole, to members of the ex post facto subclasses. Plaintiffs ask this court to find that the 2006 and 2011 amendments to SORA are not severable and to permanently enjoin Defendants from enforcing SORA against members of the ex post facto subclasses. Defendants do not dispute that members of the ex post facto subclasses are entitled to injunctive relief but argue that this court should certify the issue of the severability,

10

passing it to the Michigan Supreme Court for final determination. Defendants contend that certification is necessary to avoid the possibility of inconsistent judgments because the Michigan Supreme Court will soon address in the *Betts* case "the very questions posed by the Plaintiffs in their motion." (ECF No. 66, PageID.951.) In the alternative, Defendants argue that the 2011 amendments are severable from SORA because in *Does I*, the Sixth Circuit declared unconstitutional only portions of the amendments.

### 1. Scope of *Does I* Decision

The court begins by clarifying the scope of the Sixth Circuit's holding in *Does I*. Defendants argue that the Sixth Circuit declared unconstitutional only certain portions of the amendments of SORA, specifically those portions of the amendments which sweep more broadly than SORA's federal analog, the Sex Offender Registration and Notification Act ("SORNA"). Defendants' position, implying as it does that the Sixth Circuit tailored its ruling to coincide with SORNA, relies heavily on the supposed intent of the Michigan legislature to bring SORA into compliance with SORNA in passing the 2011 amendments. A large problem with Defendants' argument, however, is that the Sixth Circuit does not so much as mention SORNA in its opinion.

The Sixth Circuit's expansive ruling in *Does I* declared that "[t]he retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional, and

it must therefore cease." *Does I*, 834 F.3d at 706.[4] Defendants contend that the Sixth

Circuit's finding of unconstitutionality should be limited to SORA's exclusion zones, in-

person reporting requirements, and maintenance of a public registration website

because these provisions of SORA extend beyond the requirements of SORNA. (ECF

No. 66, PageID.965–67.) But the court is confident that the Sixth Circuit would have at

least mentioned SORNA and referenced specific provisions of the act if it had meant to

limit its holding in the manner described by Defendants. Instead, it addressed the

aggregate impact of the 2006 and 2011 amendments, making no distinction between

particular provisions. In fact, the court specifically declined to address the plaintiffs'

remaining constitutional challenges to SORA because "none of the contested provisions

may now be applied to the plaintiffs in this lawsuit, and anything [the court] would say on

those other matters would be dicta." *Does I*, 834 F.3d, at 706.

On remand, this court entered judgment consistent with Sixth Circuit's ruling,

declaring that the "retroactive application of the Michigan's Sex Offenders Registration

Act's (SORA) 2006 and 2011 amendments violates the Ex Post Facto Clause of the

U.S. Constitution." *Does I*, No. 12-11194 (E.D. Mich. Jan. 26, 2018) (ECF No. 153,

PageID.6514.) This court cannot now impose additional limits to the Sixth Circuit's

decision and must read *Does I* as broadly—and quite clearly—invalidating all portions of

---

[4] To the extent that this court's opinion in *Cain v. Michigan, et al.*, No. 19-cv-10243 (E.D. Mich. June 5, 2019) suggests the opposite result, the court now clarifies its position that the Sixth Circuit's holding relates to the entirety of the 2006 and 2011 amendments. In *Cain*, the court's primary rational for denying the plaintiff's request for preliminary injunction was that the plaintiff, as a member of the mandatory *Does II* class, could not obtain individual injunctive relief while the class litigated its constitutional claims.

the 2006 and 2011 amendments as applied to the members of the ex post facto subclasses. With this point of clarification in mind, the court turns to the issues of certification and the severability of SORA's amendments.

## 2. Certification to Michigan Supreme Court

The briefing on the issue of severability focuses on the 2011 amendments[5] to SORA, which comprise roughly half of the statute. (ECF No. 62-2, PageID.841–62.) The parties dispute whether the 2011 amendments are severable, meaning whether the amendments are so intertwined with the statute that removing them renders incomprehensible the entirety of SORA. Plaintiffs argue that the 2011 amendments are not severable and that SORA must be declared null and void as applied to members of the ex post facto subclasses. Defendants respond that the Michigan Supreme Court, not this court, should determine the issue of the severability and urge this court to certify the question. Defendants suggest that certification is appropriate because the Michigan Supreme Court will soon rule on SORA's severability in *People v. Betts*, No. 14-8981 (Mich.). In the alternative, Defendants argue that the amendments are severable.

Eastern District of Michigan Local Rule 83.40 provides the standard for certifying an issue to a state court:

(a) Upon motion or after a hearing ordered by the Judge sua sponte, the Judge may certify an issue for decision to the highest Court of the State

---

[5] At the hearing, the parties agreed that the 2006 amendments were severable. The court's analysis— like the parties' briefs—will focus on the severability of the 2011 amendments because if the 2011 amendments cannot be severed, SORA cannot apply to *any* members of the ex post facto subclasses, including registrants whose crimes subjecting them to registration were committed before the enactment of the 2006 amendments. *See infra* Part IV.A.3.

whose law governs its disposition. An order of certification shall be accompanied by written findings that:

> (1) the issue certified is an unsettled issue of State law, and

> (2) the issue certified will likely control the outcome of the federal suit, and

> (3) certification of the issue will not cause undue delay or prejudice.

Such order shall also include citation to precedent, statutory or court rule authority authorizing the State Court involved to resolve certified questions.

(b) In all such cases, the order of certification shall stay federal proceedings for a fixed time which shall be subsequently enlarged only upon a showing that such additional time is required to obtain a State Court decision and is not the result of dilatory actions on the part of the litigants.

(c) In cases certified to the Michigan Supreme Court, in addition to the findings required by this Rule, the United States District Court shall approve an agreed statement of facts which shall be subsequently transmitted to the Michigan Supreme Court by the parties as an appendix to briefs filed therein.

E.D. Mich. L.R. 83.40.

"Whether to utilize a state court's certification procedure is a matter within the discretion of the court and is 'most appropriate when the question is new and state law is unsettled.'" *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194 (6th Cir. 2015). Additionally, "the appropriate time for a party to seek certification of a state-law issue is before, not after, the district court has resolved the issue." *Id.* Upon review of the parties' briefs and arguments, the court cannot make the necessary findings required by Rule 83.40 to certify the issue of severability to the Michigan Supreme Court.

*First*, the question of severability is not "an unsettled issue of state law." E.D. Mich. LR 83.40(a)(1). Although "[s]tate law governs the question of severability," *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 466 (6th Cir. 1999), the state of Michigan has clearly defined law on severability. *See infra* Part IV.A.3. Michigan's existing severability law presents this court with "a reasonably clear and principled course . . . to follow." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). And as Plaintiffs correctly observe, "[w]hile Michigan courts have not precisely addressed severability of the 2011 SORA amendments, '[t]he state court need not have addressed the exact question, so long as well-established principles exist to govern a decision.' *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194 (6th Cir. 2015)." (ECF No. 62, PageID. 827–28.)

To the extent Defendants argue that the severability of SORA's 2011 amendments is a novel question of state law because the Michigan Supreme Court granted leave to appeal in *Betts*, such argument misses the mark because the issues in *Betts* are not identical to the remaining questions of law in this case. Before the *Betts* court can reach the topic of severability, it must first address threshold issues of state constitutional law which the Sixth Circuit has already answered at the federal level, namely whether SORA amounts to punishment and can be applied retroactively. *Does I*, 834 F.3d at 705–06. The Michigan Supreme Court is not bound by the Sixth Circuit's rulings in *Does I* and may come to different conclusions based on Michigan's constitution. For example, as Plaintiffs observe, the Michigan Supreme Court may reach a narrower decision than the Sixth Circuit and decide that SORA became punishment

after the 1997 amendments. In that case, the court would then address whether the 1997 amendments are severable. The "novel" question of state law at issue in *Betts*— whether SORA amounts to punishment—is no longer a relevant question to *this* court at this stage in the case. Should the Michigan Supreme Court reach the issue of severability in *Betts*, the court will simply apply Michigan's clearly established severability law. This court need not wait for that possibility to occur. This court is capable of applying established Michigan severability law in this case.[6]

*Second*, certification will not "control the outcome" of this case because the severability of the 2011 amendments is but one facet of one of Plaintiffs' four separate claims. Even though Defendants do not present any new arguments on Plaintiffs' non ex post facto claims, a determination by the Michigan Supreme Court on severability will not resolve the lingering questions of injunctive relief in this case.

*Third*, certification will cause additional, and undue, delay and prejudice to Plaintiffs. Three and a half years have passed since the *Does I* ruling. Certification would further draw out these proceedings for an indeterminate period of time while: (1) the parties prepare the statement required by E.D. Mich. LR 83.40(c), (2) the parties

---

[6] Should the *Betts* court reach the issue of the of severability of the 2011 amendments *and* that ruling runs somehow contrary to this court's determination, this court can modify its judgment to conform with *Betts. See* Fed. R. Civ. Pro. 60(b). When the court raised with Defendants at the hearing the feasibility of amending the judgment in this case to conform with a possible, adverse judgment from the *Betts'* court, Defendants asserted that amending the judgment would require the expenditure of additional judicial resources. Near the eight-year mark in this combined litigation, the court is not much daunted by the prospect of expending *additional* judicial resources . . . as the court put it at argument, that horse has left the barn. In sum, Defendants offered no legal justification for why amendment under Rule 60 would not be appropriate.

brief and argue the issue of certification for the Michigan Supreme Court, (3) the

Michigan Supreme Court decides whether to accept the certified question, Mich. Ct. R.

7.308(A)(2), (4) the Michigan Supreme Court issues a merits opinion, and (5) the parties

return to this court and relitigate any remaining issues, particularly injunctive relief.

Given the clarity of Michigan law on severability, the age of this case, and the ongoing

violation of Plaintiffs' rights, the additional delay inevitably brought on by the certification

process is unwarranted and inappropriate. *See Valls v. Allstate Ins. Co.,* 919 F.3d 739,

744 (2d Cir. 2019) (declining certification partly due to the "inevitable burdens on the

parties relating to the cost and delay"); *Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d

266, 275 (5th Cir. 1976) (explaining that in the context of certification, "delay that is not

absolutely necessary should be avoided," especially when a case is already several

years old); *Montgomery v. Gore Mutual Insurance Co.*, 2019 WL 5303749 (E.D. Mich.

2019) (Drain, J.) (denying certification, in part, to avoid further delay in the two-year-old

case). The court will decline to certify the question of the severability of SORA's 2011

amendments and will turn to the merits of the parties' severability arguments.

### 3. Severability of the 2011 Amendments

Michigan law governs the question of severability. *Memphis Planned*

*Parenthood, Inc.*, 175 F.3d at 466. "The general rule favors severability." *Blank v. Dep't*

*of Corr.,* 122, 611 N.W.2d 530, 539 (Mich. 2000). For a statute to be severable, "the

valid portion of the statute must be independent of the invalid sections, forming a

complete act within itself." *Pletz v. Sec'y of State*, 336 N.W.2d 789, 808 (Mich. Ct. App.

1983). In determining the severability of a statute, the court should first consider

whether "the Legislature expressed that the provisions at issue were not to be severed from the remainder of the act." *Blank v. Dep't of Corr.,* 122, 611 N.W.2d at 540. If not, the court must then determine whether the "unconstitutional portions are so entangled with the others that they cannot be removed without adversely affecting the operation of the act." *Blank*, 611 N.W.2d at 540.

The statutory text of SORA contains no severability clause.[7] However, the Michigan Legislature has adopted a general severability clause applicable to all statutes:

> In the construction of the statutes of this state the following rules shall be observed unless such construction would be inconsistent with the manifest intent of the legislature, that is to say: If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application . . . , and to this end acts are declared to be severable.

Mich. Comp. Laws § 8.5. Under this framework, the court concludes that the 2011 amendments to SORA are not severable.

The highlighted version of SORA attached as an exhibit to Plaintiffs' motion shows that the 2011 amendments permeate nearly every section of the statute, most problematically the definition section of the act related to the tier classification system. (ECF No. 62-2, PageID.841–862.) It is fair to say that the 2011 amendments almost entirely rewrote the statute. Removing the deeply ingrained 2011 amendments renders

---

[7] Although Mich. Comp. Laws. § 28.728(8) provides that if the public availability of SORA information is declared unconstitutional, the website must be revised accordingly, such instructions do not amount to a severability clause for the statute as a whole.

the statute, as Plaintiffs' aptly describe, a "nonsensical alphabet soup" of sentence

fragments.[8] (ECF No. 62, PageID.821.) The 2011 amendments "are not like a collection

---

[8] Encountering the resulting fragmented product induces in the reader a reaction of "Wait . . . what?" Take as one of many examples § 28.725 of SORA. That section is meant to describe "Conditions requiring individual to report in person and provide notice to registering authority; release of incarcerated individual; notice; compliance." With the 2011 amendments excised it would read as follows:

(1) An individual required to be registered under this act shall and notify the having jurisdiction where his or her residence or domicile is located after:
(a) individual changes or vacates his or her residence domicile

(5) after either of the following occurs, the department of corrections shall notify the local law enforcement agency or sheriff's department having jurisdiction over the area to which the individual is transferred or the department post of the transferred residence or domicile of an individual required to be registered under this act:
(a) The individual is transferred to a community residential program.
(b) The individual is transferred into a correctional facility of any kind, including a correctional camp or work camp.

(6) An individual required to be registered under this act shall and notify the before he or she changes his or her domicile or residence to another state. The individual shall indicate the new state and, if known, the new address. The department shall update the registration and compilation databases and promptly notify the appropriate law enforcement agency and any applicable sex or child offender registration authority in the new state

(8) If the probation or parole of an individual required to be registered under this act is transferred to another state or an individual required to be registered under this act is transferred from a state correctional facility to any correctional facility or probation or parole in another state, the department of corrections shall promptly notify the department and the appropriate law enforcement agency and any applicable sex or child offender registration authority in the new state. The department shall update the registration and compilation databases.

(9) An individual registered under this act shall comply with the

of bricks, some of which may be taken away without disturbing the [provisions that existed before], but rather are like the interwoven threads constituting the warp and woof of a fabric, one set of which cannot be removed without fatal consequences to the whole." *Carter v. Carter Coal Co.*, 298 U.S. 238, 315 (1936) (striking down the Bituminous Coal Conservation Act). Without the 2011 amendments, SORA registrants and law enforcement officials have no guidance for *who* must register, *what* events must be reported, *where* registrants must report, *how* often registrants must report, or *when* registrants become eligible for removal from the registry. Michigan law makes clear that SORA cannot be enforced given such glaring omissions. *See In re Apportionment of State Legislature-1982*, 321 N.W.2d 565, 582 (Mich. 1982) (holding that in light of the illegality of Michigan's weighted land area-population apportionment formula, all apportionment rules must be struck down because the rules were "inextricably related" to the formula).

Courts must avoid an approach to severability that "would require a significant rewrite of the statutory language." *People v. Lockridge*, 870 N.W.2d 502, 520 (Mich. 2015). Without the key definitions and provisions provided by the 2011 amendments, SORA in its current form is incomprehensible to registrants and enforcement officials alike. While the court may excavate and remove unconstitutional pieces of a statute, it

---

verification procedures and proof of residence procedures prescribed in sections 4a and 5a.

(10) Except as provided in shall comply with this section for.

(11) Except as provided in shall comply with this section for.

must hesitate gravely before trying to backfill the holes left behind with newly-crafted statutory language. The burden of that manual labor falls, in almost every instance, to the legislature. As the Constitution empowers the court to exercise "neither force nor will but merely judgment", The Federalist No. 78 (A. Hamilton) (capitalization altered), it remains "the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 178 (1803). "There can be no liberty . . . if the power of judging be not separated from the legislative and executive powers." The Federalist No. 47 (J. Madison).

Accordingly, because the 2011 amendments cannot be severed from the statute, the court holds that SORA *in toto* cannot be applied to any members of the ex post facto subclasses.[9]

### 4. Revival of Earlier Version of SORA

Plaintiffs argue that the court cannot revive an earlier version of SORA because any revised statute would be void for vagueness and contradict the intent of the legislature. (ECF No. 62, PageID.822–27.) Defendants respond, in a footnote, that Michigan law favors reviving previous versions of a statute when the existing statute has been declared unconstitutional. (ECF No. 66, PageID.972.)

---

[9] In light of this ruling, the severability of the 2006 amendments is now moot, although the court notes that the parties agreed at the hearing that the 2006 amendments are severable. The court's determination that the 2011 amendments are not severable means that the entirety of SORA cannot apply to any persons whose crime subjecting them to registration occurred before the enactment of the 2011 amendments.

There exists some precedent to suggest that Michigan allows for earlier versions of a statute to be revived when the current version of a statute is declared unconstitutional. *See Mcclellan v. Judge Of Recorder's Court Of Detroit*, 201 N.W. 209, 212 (Mich. 1924) ("We are therefore constrained to hold the law invalid, which leaves all preceding laws upon that subject in force."); *Glancy v. City of Roseville*, 577 N.W.2d 897, 903 (Mich. 1998) (Kelly, J. dissenting). At the same time, in the context of legislative revival, Michigan has adopted an explicit, anti-revival approach. *See* Mich. Comp. Laws. § 8.4 ("Whenever a statute, or any part thereof shall be repealed by a subsequent statute, such statute, or any part thereof, so repealed, shall not be revived by the repeal of such subsequent repealing statute."). This apparent contradiction between Michigan case law and statutory authority, along with the practical considerations described below, compels the court to conclude that revival of an earlier version of SORA is not appropriate.

The current version of SORA contains no revival clause, and the statute has been extensively modified since its passage in 1994. *See* 1996 Mich. Pub. Acts 494; 1999 Mich. Pub. Acts 85; 2002 Mich. Pub. Acts 542; 2004 Mich. Pub. Acts 238, 239, 240; 2005 Mich. Pub. Acts 121, 127, 132; 2006 Mich. Pub. Acts 46; 2011 Mich. Pub. Acts 17, 18; 2013 Mich. Pub. Acts 149. The dramatic revisions to SORA throughout the years leaves the court at a loss to determine which version of SORA most appropriately captures the legislative's "manifest intent" supporting the current version of the statute. The court's revival inquiry is further complicated by the fact that SORA, in light of this opinion, is unenforceable in whole as to members of the ex post facto subclasses but

remains enforceable, under the terms of this opinion, as to all registrants whose offenses requiring them to register occurred after the enactment of the 2011 amendments.

Thus, if SORA were to be revived, not only must the court decide which version of SORA to revive, but the court must also decide which version of SORA should apply to which group of registrants. Making these determinations invites pure speculation on the part of the court and could result in a system in which different versions of SORA apply to different classes of registrants, which would create an administrative nightmare for law enforcement and registrants alike. For example, if the court were to revive an earlier version of SORA, the court must decide which one of the five pre-2006 versions of SORA would apply to members of the pre-2006 ex post facto subclass. Additionally, the court would also need to decide which version of SORA should apply to members of the pre-2011 subclass or whether each registrant should be forced to comply with the version of  SORA in effect at the time of his offense. Absent any indication of legislative manifest intent regarding which revival configuration is preferred, the court may as well spin the wheel and revive whichever version of SORA on which the marble lands. Registrants, law enforcement, and the public, however, deserve a reasoned resolution.

Putting aside the guesswork inherent in reviving an earlier version of SORA, the court concludes that revival is not appropriate for another reason. Revival would force registrants to comply with an earlier version of the statute that is not easily locatable and potentially in contradiction to the current, published, version of the law. Thus, to ensure their compliance with the law, registrants must first locate earlier versions of SORA and

then reconcile the applicable version with the current law—this is an arduous task, even for individuals with legal research experience and access to online legal databases. Expecting laypeople to engage in such "legal archeology"—as Plaintiffs' counsel puts it—would violate vagueness principles, specifically the fair notice requirement under which laws must be "clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 393 (1926). Law enforcement too would be saddled with the burden of locating and understanding outdated statutes and, depending on the configuration of the revived version of SORA, be required to find each offenders' offense date—which is often buried deep in court documents—to determine which version of SORA to enforce against a particular registrant. Such individualized enforcement is not a workable solution.

"Courts may not speculate regarding legislative intent beyond the words expressed in a statute. Hence, nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself." *Mich. Educ. Ass'n v. Sec'y of State*, 801 N.W.2d 35, 48 (Mich. 2011) (quoting *Omne Fin, Inc v Shacks, Inc.*, 596 NW2d 591 (Mich. 1999)). SORA has undergone numerous substantive changes since its enactment. Neither party suggests, and the court simply cannot imagine, a way for the court to make an informed and logical determination as to which iteration and configuration of SORA most accurately captures the current manifest intent of the Michigan legislature. The court will not engage in the kind of speculation required to piece together a revived version of SORA.

Unless and until decisive action is taken by the Michigan legislature, no provisions of SORA may be enforced against members of the ex post facto subclasses.

## B. Due Process and First Amendment Claims (Counts I, II, and III)

Plaintiffs move for partial summary judgment on behalf of the primary class on Count I (Vagueness), Count II (Strict Liability), and Count III (First Amendment). Plaintiffs ask the court to declare certain provisions of SORA unconstitutional, consistent with this court's rulings in *Does I*, and to enjoin Defendants from enforcing the unconstitutional portions of SORA against all registrants. Defendants do not substantially disagree with this course of action.

In their response, Defendants to do not present any new challenges to the court's rulings in *Does I* and admit that "nothing has occurred in the intervening time [since *Does I*] that would compel the [c]ourt to reach a different result from those rulings here." (ECF 77, PageID.1654.) Defendants republish their arguments initially raised in *Does I* for purposes of appeal but nevertheless agree with Plaintiffs that the portions of SORA which this court declared unconstitutional in *Does I* can be severed and that SORA remains enforceable, without the unconstitutional provisions, against all registrants whose offenses subjecting them to registration occurred after the enactment of the 2011 amendments. (ECF No. 77, PageID.1660, 1667–1678.) The remainder of Defendants' brief restates their earlier argument that the question of severability should be certified to the Supreme Court of Michigan.

The *Does I* case involved constitutional challenges to SORA brought by four individual plaintiffs whereas this case involves constitutional challenges pursued by a

certified class. Because *Does I* was a separate case with different plaintiffs, this court's rulings in *Does I* are not *binding* determinations in this case. *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) ("Under the doctrine of law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that *same* litigation.") (emphasis added). Even though *Does I* is not binding precedent, the parties present no new arguments suggesting that the court's analysis in *Does I* should not be extended to this case. Nor does the court see any reason to deviate from its earlier determinations on the same questions of law presented in the instant motion. Accordingly, the court reaffirms its rulings in *Does I* (familiarity with which is presumed) and extends its analysis therein to the facts of this case. Consistent with the court's reasoning and findings in *Does I*, the following provisions for SORA will be declared unconstitutional as to all registrants:

(a) Provisions Void for Vagueness:

> (1) the prohibition on working within a student safety zone, Mich. Comp. Laws. §§ 28.733–734;

> (2) the prohibition on loitering within a student safety zone, Mich. Comp. Laws. §§ 28.733–734;

> (3) the prohibition on residing within a student safety zone, Mich. Comp. Laws. §§ 28.733, 28.735;

> (4) the requirement to report "[a]ll telephone numbers . . . routinely used by the individual," Mich. Comp. Laws. § 28.727(1)(h);

> (5) the requirement to report "[t]he license plate number, registration number, and description of any motor vehicle, aircraft, or vessel . . . regularly operated by the individual," Mich. Comp. Laws. § 28.727(1)(j).

(b) Provisions Void for Strict Liability:

(1) under the Due Process Clause of the U.S. Constitution, SORA must be interpreted as incorporating a knowledge requirement.

(c) Provisions Void under the First Amendment:

(1) the requirement "to report in person and notify the registering authority . . . immediately after . . . [t]he individual . . . establishes any electronic mail or instant message address, or any other designations used in internet communications or postings," Mich. Comp. Laws. § 28.725(1)(f);

(2) the requirement to report "[a]ll telephone numbers . . . routinely used by the individual," Mich. Comp. Laws. § 28.727(1)(h);

(3) the requirement to report "[a]ll electronic mail addresses and instant message addresses . . . routinely used by the individual, Mich. Comp. Laws. § 28.727(1)(l);

(4) the retroactive incorporation of the lifetime registration's requirement to report "[a]ll electronic mail addresses and instant message addresses assigned to the individual . . . and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system," Mich. Comp. Laws. § 28.727(1)(i).

The court will enjoin Defendants from enforcing only the abovementioned portions of SORA. The remainder of SORA will still apply to all registrants whose offenses subjecting them to registration occurred after the enactment of the 2011 amendments.

## C. Notice Requirement

Plaintiffs also request that this court order Defendants to provide notice of the relief granted in this order to all SORA registrants, law enforcement officials, and prosecuting attorneys. The Federal Rules of Civil Procedure grant the court broad discretion to ensure that class members receive proper notice. Fed. R. Civ. P. 23(c)(2)(A), (d)(1)(B). This court receives several calls a week from registrants inquiring

27

about the status of SORA and of this case, and is therefore aware of the confusion which presently exists regarding the legal status of SORA. The rulings in this order are likely to add to the existing uncertainty among law enforcement and registrants if notice is not provided. Thus, the court will order notice under the terms described below.

Plaintiffs assert that the Michigan State Police SOR Unit is best suited to issue notices because it maintains the records for all registrants and has experience with providing notice to registrants and law enforcement. (ECF No. 75, PageID.1150.) The court is amendable to the proposition of having the Michigan State Police spearhead the dissemination of notices but will direct the parties to confer and suggest to the court the most appropriate form of notice and methods for providing notice. The court will direct the parties to begin preparing notices to provide to registrants, law enforcement, and prosecuting attorneys. As part of this process, the parties will work to update the MSP Explanation of Duties form—which is provided to registrants each time they report—to accurately reflect the legal status of SORA in light of this order. The court will decide any issues that may arise as the parties craft the required notices, and approve a final form.

## V. CONCLUSION

For several years, registrants have been forced to comply with unconstitutional provisions of SORA. The parties, and this court, expected that the Sixth Circuit's ruling would spur legislative action, and for some time, it appeared that the legislature was poised to pass a new and comprehensive statute, obviating the need for this opinion. Unfortunately, the legislature was not able to finalize a new registration statute. Faced

with the continued violation of their rights, Plaintiffs returned to this court to remedy Defendants' ongoing violations. The court's duty is to invalidate those portions of SORA that violate the Constitution. In so doing, the court recognizes that its ruling will fracture the existing structure of SORA. However, the court anticipates that its ruling will reignite efforts to finalize a new, unified registration statute that can survive constitutional review, as has the national model, SORNA.

But until such time as the legislature acts, SORA will be unenforceable against a large portion of registrants and may be enforced only in part against the remaining registrants.

For the reasons explained above, the court will grant Plaintiffs' pending motions and will enter permanent injunctive relief on behalf of the ex post facto subclasses and the primary class. Upon the entry of final judgment in this case, Defendants will be permanently enjoined from enforcing any provision of SORA against members of the ex post facto subclasses and will be permanently enjoined from enforcing the provisions described in Part III.B of this opinion against any registrant. The parties will immediately begin efforts to formulate a joint, proposed form of judgment, which will become effective 60 days after entry. The court will include this 60-day window until the judgment becomes effective principally to allow time for the legislature to craft and enact a new statute.

Additionally, the parties will promptly begin to prepare documents sufficient to provide notice of this opinion, and its impact, to all registrants, all law enforcement officials, and prosecuting attorneys responsible for enforcement of SORA. As part of this

notification process, Defendants must update their Explanation of Duties form provided to all registrants.

To be clear: SORA will not become unenforceable as of the date of this order. Rather, the holdings in this opinion will become effective and enforceable only after the entry of a final judgment, at the time specified in that final judgment. Accordingly,

IT IS ORDERED that Plaintiffs' motion for declaratory and injunctive relief (ECF No. 62) is GRANTED. Michigan's SORA is DECLARED NULL AND VOID as applied to members of the ex post facto subclasses (any registrant whose offense requiring them to register, and who has not committed a subsequent offense, occurred prior to April 12, 2011). Defendants and their agents will be ENJOINED from enforcing ANY provision of SORA against members of the ex post facto subclasses.

The holdings in this order will not become effective until the time described in the Judgment, which will be entered later.

IT IS FURTHERED ORDERED that Plaintiffs' motion for partial summary judgment (ECF No. 75) is GRANTED. Defendants and their agents will be ENJOINED from enforcing the following provisions of SORA against any registrant:

(a) Provisions Void for Vagueness:

(1) the prohibition on working within a student safety zone, Mich. Comp. Laws. §§ 28.733–734;

(2) the prohibition on loitering within a student safety zone, Mich. Comp. Laws. §§ 28.733–734;

(3) the prohibition on residing within a student safety zone, Mich. Comp. Laws. §§ 28.733, 28.735;

(4) the requirement to report "[a]ll telephone numbers . . . routinely

used by the individual," Mich. Comp. Laws.§ 28.727(1)(h);

(5)the requirement to report "[t]he license plate number, registration number, and description of any motor vehicle, aircraft, or vessel . . . regularly operated by the individual," Mich. Comp. Laws.§ 28.727(1)(j).

(b) Provisions Void for Strict Liability:

(1) under the Due Process Clause of the U.S. Constitution, SORA must be interpreted as incorporating a knowledge requirement.

(c) Provisions Void under the First Amendment:

(1) the requirement "to report in person and notify the registering authority . . . immediately after . . . [t]he individual . . . establishes any electronic mail or instant message address, or any other designations used in internet communications or postings," Mich. Comp. Laws. § 28.725(1)(f);

(2) the requirement to report "[a]ll telephone numbers . . . routinely used by the individual, Mich. Comp. Laws.§ 28.727(1)(h);

(3) the requirement to report "[a]ll electronic mail addresses and instant message addresses . . . routinely used by the individual," Mich. Comp. Laws.§ 28.727(1)(l);

(4) the retroactive incorporation of the lifetime registration's requirement to report "[a]ll electronic mail addresses and instant message addresses assigned to the individual . . . and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system," Mich. Comp. Laws. § 28.727(1)(i).

IT IS FURTHER ORDERED that Defendants PROVIDE NOTICE of this ruling to all registrants, and all law enforcement officials and prosecuting attorneys tasked with the enforcement of SORA. The parties will jointly formulate the form of such notices, including formulating an updated Explanation of Duties form to provide to all registrants

each time they report. The parties are DIRECTED to submit their proposed notice by

**March 13, 2020**.[10]

FINALLY, IT IS ORDERED that Plaintiffs submit a joint, proposed form of

judgment encapsulating these rulings by **March 13, 2020**. This proposed judgment will

include a provision making this court's rulings effective 60 days after the entry of the

judgment.[11]

                                    s/Robert H. Cleland                        /
                                    ROBERT H. CLELAND
                                    UNITED STATES DISTRICT JUDGE
Dated:  February 14, 2020


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, February 14, 2020, by electronic and/or ordinary mail.

                                    s/Lisa Wagner                              /
                                    Case Manager and Deputy Clerk
                                    (810) 292-6522

S:\Cleland\Cleland\HEK\Civil\16-13137.DOES.dispositive.motions.HEK.2.RHC.2.docx

---

[10] The court expects the parties to engage in good faith negotiations to arrive at a stipulated form(s) of notice. The parties are granted flexibility in the form of such notice, including whether different forms of notice should be provided to different classes of registrants, law enforcement, and prosecutors.

[11] The court may delay entry of the judgment upon the stipulated request of the parties.